IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) 2:17-cr-00253 |
| | ) |
| v. | ) Chief Judge Mark R. Hornak |
| | ) |
| JAMES WINSTON JONES, | ) |
| | ) |
| Defendant. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

**I.     Synopsis**

On August 19, 2020, Mr. James Winston Jones, Jr. pleaded guilty before this Court to possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g). Mr. Jones has not yet been sentenced. In the Presentence Investigation Report ("PSR"), the Probation Office concluded that Mr. Jones's three (3) prior serious drug offenses qualify him as an "armed career criminal" under the Armed Career Criminal Act ("ACCA"), which requires three predicate offenses for its application. 18 U.S.C. § 924(e). (ECF No. 101, at 7.) Mr. Jones now objects to that determination, arguing that two of the three offenses specified in the PSR at paragraphs 36 and 38 were not committed on different occasions and should therefore count as only one qualifying offense, rather than two, for ACCA calculation purposes. The United States responds that those offenses were sufficiently distinct in time to qualify as two separate ACCA predicate offenses, which would result in ACCA qualification.

1

Because the Court concludes that the offenses at issue resulted from "separate episodes," which were sufficiently distinct in time and allowed Mr. Jones the opportunity to cease and desist his course of criminal conduct, the Court concludes that the offenses at issue properly qualify as two separate ACCA predicate offenses. Mr. Jones's objections are therefore overruled, and the Court adopts the Probation Office's conclusion that he is an "armed career criminal" under 18 U.S.C. § 924(e).

## II.  Background

The PSR identifies the three following groups of convictions as predicate offenses supporting the ACCA's application: (1) multiple felony convictions arising from Mr. Jones's sale of crack cocaine to a confidential informant on January 2, 2008 (PSR ¶ 35); (2) multiple felony convictions arising from Mr. Jones's sale of crack cocaine to different informant on February 22, 2008 (PSR ¶36) ; and (3) multiple felony convictions arising from the discovery of crack cocaine and heroin during a search of Mr. Jones's residence, which also took place on February 22, 2008. (PSR ¶ 38.) Mr. Jones does not contest that all three sets of convictions qualify as "serious drug offenses." He also does not contest that the convictions arising from the controlled drug buy on January 2, 2008 properly serve as one ACCA predicate offense.

Mr. Jones does object to the PSR determination that the two sets of convictions arising from the controlled purchase and the subsequent search of Jones' residence on February 22, 2008 constitute offenses committed on "occasions different from one another" for the purposes of the statute. 18 U.S.C. § 924(e)[1]. Therefore, at issue here is whether the convictions resulting from

---

[1] Specifically, the ACCA sentencing enhancement applies only to those persons who violate 18 U.S.C. § 922(g) and have "three previous convictions. . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . ." 18 U.S.C.§ 924(e)(1).

2

the drug sale and residence search on February 22, 2008 qualify as separate offenses for the purposes of the ACCA.

The events underlying those offenses are as follows. On February 22, 2008, a confidential informant conducted a controlled purchase of a $100 of crack cocaine from the defendant and a co-conspirator. (ECF No. 111-2, at 5.) The informant met Mr. Jones and a co-conspirator outside of Mr. Jones's residence, after which all three entered the residence. *Id.* Once inside the residence, Jones accepted $100 cash from the informant, went upstairs to retrieve two baggies of crack cocaine, and exchanged the crack cocaine for the cash. *Id.*

The Affidavit of Probable Cause[2] (ECF No. 111-2, at 5) confirms that at 7:55pm on that date, directly after the completion of the drug transaction, police knocked on the door of the residence and arrested Mr. Jones for the sale of crack cocaine. *Id.* Mr. Jones was kept continuously in custody from then until he was sentenced. *Id.* After arresting Mr. Jones and the house's other occupants, the police proceeded to secure the residence and immediately obtained a search warrant for the residence. *Id.* At 10:15pm on that date, law enforcement searched the residence, finding cocaine, heroin, cash, and a stolen handgun. (ECF No. 111-3, at 8.)

The convictions that resulted from these events can be placed in two (2) groups: the "Sale Offenses," which resulted from the conduct underlying the controlled buy, and the "Search Offenses," which resulted from the search of Mr. Jones's residence. First, the "Sale Offenses:" As the result of the controlled purchase, Mr. Jones was convicted of (1) Conspiracy To Possess With Intent To Deliver a Controlled Substance and (2) Manufacture, Delivery, Or Possession

---

[2] Both in his filings, and on the record at argument on the Objections to the ACCA conclusion of the PSR, the Defendant stipulated that the Court could consider this Affidavit, and all of the documents of record at ECF Nos. 104-1, 104-2, and 104-3, and ECF Nos. 111-1, 111-2, and 111-3, in making the determinations at issue here.

3

With Intent To Manufacture Or Deliver Cocaine, 35 Pa. C.S.A. § 780-113(a)(30). (ECF 111-2; PSR ¶ 38.)

Second, the "Search Offenses:" As the result of the search of Mr. Jones' residence, Mr. Jones was convicted of (1) and (2) Conspiracy To Possess With Intent To Deliver A Controlled Substance; (3) Manufacture, Delivery, Or Possession With Intent To Manufacture Or Deliver Cocaine, 35 Pa. C.S.A. § 780- 113(a)(30); and (4) Manufacture, Delivery, Or Possession With Intent To Manufacture Or Deliver Heroin, 35 Pa. C.S.A. § 780-113(a)(30). (ECF 111-2; PSR ¶ 36.) The question, therefore, is whether these two sets of convictions constitute separate predicate offenses for the purpose of applying the ACCA enhancement.

### III.   Analysis

The Armed Career Criminal Act (ACCA) requires imposition of a minimum 15-year term of imprisonment for those convicted of unlawful possession of a firearm under 18 U.S.C. § 922(g) and who have three (3) prior state or federal convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e). The Act further defines "serious drug offenses" as those punishable by imprisonment for 10 years or more. *Id.* It is not disputed that all three prior convictions at issue in Mr. Jones's case constitute "serious drug convictions" under this definition.

However, the statute applies the fifteen-year mandatory-minimum sentence only to a defendant who violates 18 U.S.C. 922(g) after having received three or more convictions "for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*[.]" 18 U.S.C. § 924(e)(1) (emphasis added). In other words, the statute says that offenses serving as ACCA predicates must have been committed on different occasions in order to count separately.  To determine whether offenses have been committed on different occasions, the Third Circuit applies the "separate episode" test, under which individual convictions may count

4

separately towards the ACCA enhancement only if they are "distinct in time." *United States v. Torres*, 961 F.3d 618, 625 (3d Cir. 2020) (quoting *United States v. Schoolcraft*, 879 F. 2d 64, 73-–74 (3d Cir. 1989) (*per curiam*)). This test requires an evaluation of the circumstances of the offense conduct, including an inquiry into "the nature of the crimes, the identities of the victims, and the locations," as well as a consideration of "whether the defendant had sufficient time to cease and desist or withdraw from the criminal activity." *United States v. Mucha*, 49 Fed. Appx. 368, 371 (3d Cir. 2002) (unpublished). The sentencing court may properly determine whether prior convictions occurred on different occasions by relying on documents approved by *Shepard v. United States*, 544 U.S. 13 (2005). *See United States v. Jurbala*, 198 Fed.Appx. 236, 237 (3d Cir. 2006). Here, the parties stipulated on the record that the Court may and should also consider an even broader sweep of documents that they have filed on the docket as to these issues, as noted above.

Given that the offenses at issue occurred in the same location (at Mr. Jones's residence) and did not involve different "victims," the most significant factor in application of the separate episodes test here is the lapse of time between offenses. When applying the *Schoolcraft* "separate episodes" test to examine the lapse of time between offenses, the Third Circuit emphasizes the inquiry into whether a defendant had the "opportunity to cease and desist" the criminal activity prior to a later offense. *United States v. Chatman*, 487 F. App'x 769, 771 (3d Cir. 2012) (unpublished) (citing *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000)). And where a court concludes that a defendant did have that opportunity to cease and desist or withdraw from a course of criminal activity, "even brief differences in time between crimes suffice to constitute separate episodes" for the purposes of ACCA. *See United States v. Mucha*, 49 Fed. App'x 368, 371 (3d Cir. 2002).

For example, in *Chatman*, where the defendant pled guilty to selling drugs to the same undercover agent on two occasions five (5) days apart, the court concluded that "[i]n those five days, he had plenty of time to decide not to continue to sell drugs." 487 F. App'x at 772. Similarly, in *United States v. Swan*, 661 F. App'x 767, 770 (3d Cir. 2016), the court held that convictions for possession with intent to deliver cocaine constituted "separate episodes" where the offense conduct was separated by four (4) days, and in *United States v. Ward*, the court held that two subject drug transactions constituted separate episodes even though they were separated by only two (2) days and involved the same confidential informant. 753 F. App'x 112, 114-15 (3d Cir. 2018) (unpublished) (citing favorably to the Seventh Circuit's holding in *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000) that two sales of crack counted separate offenses under the ACCA, despite occurring within just over 24 hours of each other). And significantly, in *United States v. Blair*, the Court held that robberies occurring one day apart were "separate" offenses, while citing with approval a Sixth Circuit decision holding that robberies separated by only 45 minutes were sufficiently distinct in time. 734 F.3d 218, 228-229 (3d. Cir. 2013) (citing *United States v. Brady*, 988 F.2d 664, 668-70 (6th Cir. 1993) (*en banc*)). These decisions collectively demonstrate the Third Circuit's approach to determining whether offenses constitute "separate episodes:" where the defendant had the opportunity to cease and desist his activity, the ACCA's separate occasions requirement is met.

The Court concludes that the Search and Sale Offenses constitute separate episodes because they were sufficiently distinct in time, providing Mr. Jones with the opportunity to cease and desist criminal activity between offenses. Key to this analysis is an examination of the offenses in the order that the defendant completed them. Mr. Jones proposes that the Sale Offense conduct occurred first, and that he therefore did not have time to "cease and desist"

possessing the drugs at his residence before the subsequent Search Offenses. Ordering the Sale Offense conduct first would indeed require an inquiry as to whether Mr. Jones could have ceased possessing the drugs at his residence within the minutes after he completed the controlled buy and before he was taken into custody.

But this argument mischaracterizes the temporal order of the offense conduct, and thus the opportunity for withdrawal between offenses[3]. Because the "separate episodes" test focuses on whether a defendant has the opportunity to cease and desist his course of criminal conduct, offenses should be examined in the order that the Defendant completed the elements of the crimes–not necessarily in the order in which law enforcement later discovered or charged them.

And here, a closer examination of the elements of each crime of conviction shows Mr. Jones had in fact completed all elements of the charges arising from the Search Offenses both before the commission of the Sales Offenses and with enough time to "cease and desist" any criminal activity before the Sale Offenses. As a result of the search, Mr. Jones pleaded guilty to Counts 1 and 2, charging Criminal Conspiracy, and Counts 3 and 4, charging Possession With Intent to Distribute. (ECF No. 111-2, at 1.) These Conspiracy Counts alleged that on or about February 22, 2008, Mr. Jones unlawfully agreed with another person or persons, "with the intent of promoting or facilitating the commission of a crime," that "they or one or more of them would engage in conduct engage in conduct which would constitute such crime or an attempt or solicitation to commit such crime, or agree to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime," and that Mr. Jones "did an overt act in pursuance thereof." *Id.* Therefore, the elements of the Conspiracy

---

[3] The Court raised this issue with counsel during the argument on the Defendant's Objections, and therefore provided all counsel with an opportunity to submit supplemental briefing on this issue. Counsel for the United States did submit a supplemental brief, ECF No. 126; Counsel for the defense did not.

Counts were complete when Mr. Jones unlawfully conspired with others to possess the drugs at his residence with the intent to deliver them–necessarily prior to the conduct underlying the Sale Offenses. The reality is that the conduct that was underlying these offenses was being completed before the sale in the Sale Offense occurred, and the Defendant could have ceased those "Search Offense" activities prior to the controlled sale/buy conduct occurred.

Similarly, the Possession With Intent To Distribute charges that arose out of the Search Offense conduct alleged that Mr. Jones "did knowingly and intentionally deliver and/or possess with intent to deliver a controlled substance or manufacture, or possession with intent to manufacture a controlled substance to wit: COCAINE [and HEROIN]. . . while not licensed, or authorized pursuant to the Controlled Substance, Drug, Device and Cosmetic Act." *Id.* The elements of these charges were thus complete when Mr. Jones knowingly possessed with the intent to distribute the cocaine and heroin hidden in his residence–also prior to the Sale Offense conduct. Therefore, although the Search Offenses were discovered by law enforcement after the Sale Offenses, every element of the Counts charged as a result of the search had been met before the Sale Offenses. The Search Offenses were thus complete (albeit then on-going) before the Sale Offenses occurred.

Because the Search Offenses were complete before the Sale Offenses, the question is not whether Mr. Jones had sufficient time after the controlled buy to cease possessing the drugs at his residence, but instead whether he had sufficient time before the Sale Offense conduct to "cease and desist" his course of criminal activity that made up the Search Offenses by deciding not to sell drugs to the undercover informant. The record indicates that he did. Specifically, the charging documents state that Mr. Jones received the phone call from the informant arranging the controlled buy at 6:00pm; that he met the informant on the street outside of his residence at

7:30pm; that Mr. Jones entered his residence with the informant and his co-conspirator at 7:35pm; and that Mr. Jones completed the deal by taking the cash and retrieving crack from the second floor of the residence, then delivering the crack to the informant just before 7:39pm. (ECF No. 111-2, at 5.) Each of these steps occurred after the completion of the elements of the Search Offenses. And, as the separate episodes test requires, at each step Mr. Jones had the opportunity to, but did not, "cease and desist" his criminal conduct. *Chatham*, 487 F. App'x 769, 771.

Mr. Jones continued the conspiracy and possession conduct that underlay the Search Offenses while he engaged in the Sale Offense conduct and up until his arrest based on the Sale Offense conduct. But even in the context of an ongoing conspiracy, the "separate episodes" test still hinges on examination of a defendant's opportunity to cease and desist the conduct. The Third Circuit recently confirmed this in *Torres* when it held that a conspiracy offense counted as an ACCA predicate offense even though it covered other substantive ACCA predicate offenses, because the conspiracy included additional overt acts and because "rather than withdraw from the conspiracy, [the defendant] returned to it." *Torres*, 961 F.3d at 625. As in *Torres*, Mr. Jones had the opportunity not to continue his course of criminal conduct between the offenses at issue here. The offenses are therefore "separate episodes" and count as two distinct ACCA predicate offenses.

**Conclusion**

Mr. Jones's convictions at issue in resolving his Objections to the PSR arose from "separate episodes" which were "distinct in time" and properly count as two separate offenses for the purpose of calculating the ACCA's applicability. Combined with the January 2, 2008 controlled buy conviction (which is not at issue here), Mr. Jones has three (3) prior "serious drug offenses"

9

that count as ACCA predicate offenses. Mr. Jones's objections to the PSR determination are therefore overruled, and the Court adopts the Probation Office's finding that he is an armed career criminal for sentencing purposes under 18 U.S.C. § 924(e).

    An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:   October 30, 2020

cc:      All counsel of record